[Cite as *State v. Gragg*, 2017-Ohio-8703.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 17CA2 |
| vs. | : | |
| JAMES FRANKLIN GRAGG, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Kathryn Hapner, Hillsboro, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:11-17-17
ABELE, J.

{¶ 1} James F. Gragg, defendant below and appellant herein, appeals from a Highland County Common Pleas Court judgment of conviction and sentence for the crime of gross sexual imposition. Appellant assigns the following error for review:

> "THE TRIAL COURT ERRED IN ADMITTING STATE'S
> EXHIBITS 1 AND 2 OVER DEFENDANT'S OBJECTION."

{¶ 2} On December 6, 2016, a Highland County Grand Jury returned an indictment that charged James F. Gragg with one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony. The indictment alleged that on October 8, 2016, appellant

had sexual contact with B.T., a ten-year-old girl.

{¶ 3} At trial, the victim testified that on October 8, 2016 she was at her aunt's house and intended to go to a Halloween event. Later, she rode with appellant, her aunt's boyfriend, to a store in Sinking Springs. B.T. stated that during the drive, she sat in the front passenger seat. At one point, appellant asked B.T. if she had a boyfriend and if she liked boys. At the store, B.T. waited in the car while appellant shopped for cigarettes and gas. On the way home, "we started driving. And then he pulled into like uh, it was like an area that had a bunch of trees. It was on our way back. And I looked down at the time and I said, 'We have to leave,' because we had to go to our thing. And then he started tickling me on like my upper thigh, and I felt like he went right under my underwear and was tickling me." B.T. testified that after she told her mother, her mother took her to the police department to file a report. B.T. also testified that appellant had tickled her on the upper thigh once before in his bedroom.

{¶ 4} Andrea Powers, a forensic interviewer from the Mayerson Clinic at Cincinnati Children's Hospital, testified that she interviewed B.T. on October 20, 2016. Powers stated that B.T. told her that when she and appellant returned from a store, appellant "pulled into a wooded area and proceeded to tickle and then touched her by her vaginal area" * * * "under her panties." Powers also noted that the clinic did not perform a medical exam due to the time frame and the nature of the contact.

{¶ 5} Jennifer Shinkal, an investigator with the Highland County Sheriff's Office, testified that she interviewed appellant on October 16, 2016. At the interview appellant stated that when he and B.T. went to the store he did not stop the car at any point. He further denied touching, hugging, or tickling B.T. On October 27, 2016, appellant once again appeared at Shinkal's office and again denied touching B.T. on the date in question. However, appellant did admit that he touched the

victim on her bottom earlier that summer while she wore a swimsuit at the beach. After appellant left Shinkal's office on October 27, he called her later that day and said "You are right * * * We were driving in the car. [B.T.] was in a bad mood, so I started tickling her, and my hand slipped, and I touched her in her vaginal area." Appellant claimed, however, that he did not do this intentionally and he denied that he had stopped the car before he engaged in this behavior. During her testimony, Shinkal referred to Exhibit 1, the road map, as she testified to the route appellant had indicated that he had driven on October 8, 2016. Shinkal also testified that the topographic map, Exhibit 2, shows the wooded areas along the drive, as well as the houses and driveways. Shinkal stated that the maps came from the Geographic Information System (GIS) Office for Highland County.

{¶ 6} After Investigator Shinkal testified, the state sought to enter into evidence the two maps of Highland County. Exhibit 1 is a road map of Highland County and Exhibit 2 is a topography map that shows terrain elevation, streams, roads, fields and woods. Defense counsel objected to the introduction of the maps into evidence. After the trial court noted that the maps are a public record, the court then asked how appellant was prejudiced and counsel stated "Well, it's just irritating that we just * * * Because you tell us we have a cut-off date that we have to show discovery 7 days before trial, and that's the rule." The court replied: "Okay. Well, I would agree it should have been disclosed some time ago. But, I will say it's sloppiness, not intentional; and in this case since this is just a map that is just going to illustrate testimony, it's really kind of like a visual aid as opposed to substantive evidence, so I'm going to overrule it and admit it for that purpose. But, if it had been something that was substantive, I would have excluded it."

{¶ 7} After hearing the evidence, the jury found appellant guilty of the gross sexual imposition charge. The trial court classified appellant as a Tier II sex offender and sentenced him to

serve fifty-four months in prison. This appeal followed.

{¶ 8} In his sole assignment of error, appellant contends that the trial court erred by admitting into evidence State's Exhibits 1 and 2 over his objection. In particular, appellant asserts that after the state initially complied with the defense's demand for discovery, the state disclosed the additional materials (Exhibit 1, a road map, and Exhibit 2, a topographical map) on Friday, March 10, 2017, only three days prior to trial.

{¶ 9} Highland County Local Rule 33.2 provides: "Counsel for defendants shall be expected to request discovery from the State of Ohio promptly after being appointed or retained. The State of Ohio is expected to promptly comply. Compliance with the discovery request by a defendant should be completed prior to the first pre-trial. Defendant is expected to comply with the State's request by the final pre-trial." In addition to the local rule, Criminal Rule 16 governs the discovery process, as well as sanctions for discovery violations. "The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L)(1).

{¶ 10} When the state introduced Exhibits 1 and 2, the maps in question, defense counsel objected. The trial court, however, allowed them to come into evidence. The Supreme Court of Ohio has held that Crim.R. 16 vests the trial court "with a certain amount of discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 114, citing *State v. Parson*, 6 Ohio

St.3d 442, 445, 453 N.E.2d 689 (1983). The choice of sanction rests within the discretion of the trial court, and appellate courts will reverse only if the court abuses its discretion and the defendant is prejudiced. *Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689; *State v. Scudder*, 71 Ohio St.3d 263, 269, 71 Ohio St.3d 263 (1994). Generally, an abuse of discretion implies that a court's attitude is unreasonable, arbitrary or unconscionable. *State v. Herring*, 94 Ohio St.3d 246, 255, 762 N.E.2d 940 (2002). Further, in reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (1995).

{¶ 11} "A trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), syllabus paragraph two. *Parson* established guidelines for evaluating the trial court's exercise of discretion in this area: Where in a criminal trial, the prosecution fails to comply with Crim.R. 16 and the record does not demonstrate (1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefitted the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement, the trial court does not abuse its discretion under Crim.R. 16(E)(3) by permitting such evidence to be admitted. *Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689, syllabus. While the subsections of Crim.R. 16 have changed somewhat, these factors are still relevant to our inquiry today.

{¶ 12} After our review, we conclude that none of the three *Parson* factors exist in this case. First, nothing in the record indicates that the state's failure to provide the two maps is a willful

discovery violation. The state did provide the maps to defense counsel prior to trial, albeit three days prior to trial. While the trial court agreed that the maps should have been disclosed earlier, the court concluded that the cause is "sloppiness" rather than an "intentional" act. In a similar case, the Sixth District considered a situation in which the state failed to disclose witnesses until the day before trial. See *State v. Shade*, 111 Ohio App.3d 565, 676 N.E.2d 938 (6th Dist.1996). The court held that although the trial court was disturbed by the state's apparent pattern of omitting witnesses from requested discovery lists, the trial court made no actual finding that the omission was willful. *Id.* at 568.

{¶ 13} Second, we must examine whether the foreknowledge of the two maps would have benefitted the accused in the preparation of his defense. In *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, the Supreme Court of Ohio considered whether the trial court abused its discretion by allowing the defendant's oral statement to two police officers into evidence even though the state failed to disclose the written statements during discovery. The court noted that the defense *had* foreknowledge of the statements because the prosecutor had, prior to trial, orally informed the defense of Hale's statements. "While this contact did not satisfy the requirement of a written summary, it clearly did provide the defense with foreknowledge of the statement." *Id.* at ¶ 117. Similarly, in the case at bar, although the state only provided notice of its intention to use the two maps three days before trial, (1) appellant did have foreknowledge of the maps prior to trial, and (2) the maps are public records that depict the county roadways and terrain, and are available at the county GIS department long before this case began.

{¶ 14} Finally, we do not believe that the record established any prejudice to the appellant. Although not provided within the discovery deadline, no surprise to the defense occurred at trial

because, once again, the prosecution disclosed the exhibits three days prior to trial.   Also, the exhibits are public records, available at all times to both parties.   The trial court stated: "this is just a map that is just going to illustrate testimony, it's really kind of like a visual aid as opposed to substantive evidence."   We agree.   In this case, the maps are visual aides used to clarify and explain testimony concerning the route that appellant drove, and the fact that the route is near wooded areas.

{¶ 15} Appellant cites *State v. Watters*, 27 Ohio App.3d 186, 500 N.E.2d 312, to support his argument that the maps would have benefitted the preparation of his defense and that their admission prejudiced him.   However, *Watters* involved a trial for gross sexual imposition in which, on the third day of trial and after the defense had called several alibi witnesses, the prosecution informed defense counsel that the state intended to call two additional witnesses, Watters' fellow prison inmates who had written letters to the prosecutor regarding appellant's case.   The trial court allowed the letters, which (1) described Watters' confession to each of the inmates to the crimes, and (2) indicated that Watters told the two inmates that he intended to fabricate an alibi defense.   The First District concluded that allowing the two letters into evidence constituted an abuse of discretion.

{¶ 16} We believe that *Watters* is distinguishable from the case sub judice for two reasons. First, the letters in *Watters* clearly could have benefitted the preparation of the appellant's defense and the nondisclosure seriously handicapped the defendant in deciding whether to testify.   In the case at bar, nothing appears in the pre-existing maps that would have benefitted the preparation of appellant's defense.   Second, while the First District found prejudice because the defendant's entire defense rested upon a credible alibi, we do not believe that prejudices exists here via admission of the two maps, showing county roadways and topographical features along the roadways.   Once again, the documents are public records that existed long before the trial.   While appellant argues

that without the maps, the victim's testimony was about "an area with a bunch of trees" that could be almost anything, we do not believe that the maps prejudiced appellant. We also note that appellant did not request a continuance of the trial, nor did appellant ask for time to review the maps, both options that would have been less restrictive than refusing to admit the maps or dismissing the case.

{¶ 17} In *Parker*, the Supreme Court of Ohio found no prejudice when the prosecutor failed to disclose a tape-recording of appellant's interview, which the prosecution used to identify him and later offered in evidence. The issue was whether a mislabeling of the tape that resulted in nondisclosure required the trial court to impose sanctions on the prosecution. The court, however, found no wilfulness and no prejudice. In the case at bar, we believe that the two maps in question are far less prejudicial than a tape recording of a defendant's interview used to identify him and offered in evidence on the issue of guilt. *Parker*, 53 Ohio St.3d 82, 558 N.E.2d 1164 (1990).

{¶ 18} Consequently, although the state's late disclosure of Exhibits 1 and 2 did violate Criminal Rule 16, we conclude that the trial court did not abuse its discretion by allowing those items into evidence. While a trial court has discretion to determine the appropriate sanction for a discovery violation, the court must choose the least severe sanction that is consistent with the rules of discovery. In the case sub judice, we believe that the trial court properly exercised its discretion.

{¶ 19} Accordingly, for the foregoing reasons, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Gragg*, 2017-Ohio-8703.]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Supreme Court of Ohio in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.